UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD SIMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-8662** |
| **ROBERT TANNER, WARDEN** | **SECTION "J"(2)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

I.  FACTUAL BACKGROUND

The petitioner, Ronald Sims, is a convicted inmate currently incarcerated in the B.B. "Sixty" Rayburn Correctional Institute in Angie, Louisiana.[2] On August 19, 2010,

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2] Rec. Doc. No. 4.

Sims was indicted by an Orleans Parish grand jury for second degree murder.[3] The Louisiana Fourth Circuit Court of Appeal summarized the facts established at trial as follows:

> Mr. Sims had been living with his child and Ivoronne Fortenberry, his girlfriend and the mother of his child, for approximately one and one half years. Ms. Fortenberry had another child, who also resided with them, fathered by the victim, Mr. Franklin.
> The day before Mother's Day in 2010, Ms. Fortenberry asked Mr. Sims to leave their house. Mr. Sims was about to go to work a night shift at that time anyway, so he went to work. When Mr. Sims returned to their house the next day, however, Ms. Fortenberry did not want to see him and called the police, who told him that he had to leave. Mr. Sims did not argue with the police and left. The police officers told him that he could call them for an escort when he returned for his things.
> Later that day, Mr. Sims returned to the house to retrieve his belongings; he did not call for a police escort. By that time, Ms. Fortenberry had removed Mr. Sims' clothing to the shed outside, and Mr. Franklin had arrived to change the locks. When Mr. Sims came to the house, Ms. Fortenberry did not let him in and directed him to the shed.
> Mr. Franklin was standing behind Ms. Fortenberry listening to what she told Mr. Sims. As soon as Ms. Fortenberry shut the door, Mr. Franklin ran outside through the back door towards the shed, approached Mr. Sims, and said, "What you gonna' do now?"; "You need to get your stuff outta here."; "And that gun, you got on you, I'ma make you use it today." While saying this, Mr. Franklin was pressing his body up against Mr. Sims' and shoving him. Mr. Sims remained on his phone and said nothing in response. Ms. Fortenberry physically pulled Mr. Franklin away from Mr. Sims before Mr. Franklin returned to the house.
> Once inside the house, Mr. Franklin asked Ms. Fortenberry whether there were supposed to be police present. When Mr. Sims knocked on the door a second time, Ms. Fortenberry asked him where the police were. Mr. Sims replied that he did not need the police. Neither Ms. Fortenberry nor Mr. Franklin called the police at that point.
> Mr. Sims knocked on the door a second time, asking for his television. Ms. Fortenberry told him he was not getting it and shut the door on him. Mr. Franklin was again standing in the doorway behind Ms. Fortenberry during her exchange with Mr. Sims.

---

[3]St. Rec. Vol. 1 of 3, Indictment, 8/19/10; Grand Jury Return, 8/19/10.

>       Mr. Sims knocked on the door a third time, this time asking for his PlayStation. Ms. Fortenberry closed the door, gathered the game console, and then handed it to Sebron Magee, Mr. Sims' friend who had come to help him collect his belongings.
>       When the door opened this final time, all four individuals were standing in the doorway, including Mr. Franklin and Mr. Sims. Mr. Franklin and Mr. Sims starting arguing. The two men argued for a few minutes before Mr. Sims pulled a Glock pistol from his waistband. Mr. Sims owns a firearm because his job requires him to work late nights.
>       As soon as the gun came out, Mr. Magee grabbed Mr. Sims' arm and held the gun down. Mr. Magee told Mr. Sims that it is not worth it, that he should just leave. Mr. Magee testified that after saying this, he turned to walk back to his car, and he heard a shot fired. He then ran to his car and drove away. Mr. Magee heard only one shot fired.
>       When Mr. Sims started shooting, Ms. Fortenberry moved to her right, back inside the residence. Ms. Fortenberry testified that she just saw Mr. Sims shooting and Mr. Franklin backing up. Ms. Fortenberry was unable to testify as to how many shots were fired. But the evidence shows that Mr. Franklin was shot thirteen times. Ms. Fortenberry's two children were home at the time of the shooting.
>       Two hours later, Mr. Sims called the police to turn himself in. When he met the police officers at a gas station, the designated location, the police officers found his Glock in his car.

State v. Sims, 106 So.3d 709, 710-11 (La. App. 4th Cir. 2012); State Record Volume 1 of 3, Louisiana Fourth Circuit Court of Appeal Opinion, 2011-KA-1447, pages 2-4, December 12, 2012.

Sims waived trial by jury and was tried in the state court on November 18, 2010, and found guilty of the responsive verdict of manslaughter.[4] On March 18, 2011, the state trial court sentenced Sims to serve 30 years in prison without benefit of parole or

---

[4] St. Rec. Vol. 1 of 3, Trial Minutes, 11/18/10; St. Rec. Vol. 2 of 3, Trial Transcript, 11/18/10; see also, St. Rec. Vol. 1 of 3, Minute Entry, 11/17/10 (waiver of jury trial).

suspension of sentence.[5]  On March 30, 2011, the court denied Sims's motion to reconsider the sentence.[6]

On direct appeal to the Louisiana Fourth Circuit, appointed counsel asserted a single claim that the state trial court imposed an excessive sentence.[7]  On December 12, 2012, the Louisiana Fourth Circuit affirmed the conviction and sentence, finding no merit in the claim.[8]

Sims's conviction became final thirty (30) days later, on January 11, 2013, when he did not seek further review in the Louisiana Supreme Court.[9]  See Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process).

Eleven months later, on December 11, 2013, Sims signed and submitted to the state trial court an application for post-conviction relief asserting two claims:[10]  (1) The

---

[5]St. Rec. Vol. 1 of 3, Sentencing Minutes, 3/18/11; St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 3, 3/18/11.

[6]St. Rec. Vol. 1 of 2, Minute Entry, 3/30/11; St. Rec. Vol. 2 of 3, Hearing Transcript, 3/30/11.

[7]St. Rec. Vol. 2 of 3, Appeal Brief, 11-KA-1447, 2/1/12; Supplemental Appeal Brief, 11-KA-1447, 8/20/12.

[8]Sims, 106 So.3d at 709; St. Rec. Vol. 1 of 3, 4th Circuit Opinion, 2011-KA-1447, 12/12/12.

[9]As Sims points out, relying on state law, the State erroneously calculated the finality of Sims's conviction and sentence as January 4, 2013.

[10]St. Rec. Vol. 3 of 3, Memorandum in Support, dated 12/11/13; see also, 4th Cir. Writ Application, p. 1, 2015-K-1199, 11/3/15 (dated 10/21/15).

evidence was insufficient to support the manslaughter conviction. (2) Trial counsel was ineffective when he failed to file a motion for post-verdict judgment of acquittal or for a new trial. On August 15, 2014, the state trial court denied relief, finding the claims meritless.[11] Sims did not seek review of this ruling.

More than one year later, on October 21, 2015, Sims signed and submitted a writ application to the Louisiana Fourth Circuit requesting an order to compel the state trial court to allow him to amend the application for post-conviction relief despite the order denying it on August 15, 2014.[12] Attached to the writ application was Sims's proposed amended and supplemental application also dated October 21, 2015.[13]

On November 16, 2015, the Louisiana Fourth Circuit granted the application for the limited purpose of transferring it to the state trial court for consideration of the amended pleading.[14] On December 8, 2015, the state trial court denied relief on the amended claims, finding that the application was not timely filed.[15]

On February 19, 2016, the Louisiana Fourth Circuit denied Sims's writ application, finding the claims in both the original and amended post-conviction applications

---

[11] St. Rec. Vol. 1 of 3, Trial Court Order, 8/15/14.

[12] St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2015-K-1199, 11/3/15 (dated 10/21/15).

[13] St. Rec. Vol. 3 of 3, Amended and Supplemental Post-Conviction Relief Application, dated 10/21/15.

[14] St. Rec. Vol. 3 of 3, 4th Cir. Order, 2015-K-1199, 11/16/15.

[15] St. Rec. Vol. 3 of 3, 4th Cir. Order, 2016-K-0090, 2/19/16. This opinion quotes the state trial court's holding, although the record does not contain a copy of the ruling itself.

meritless.[16] On August 4, 2017, the Louisiana Supreme Court denied Sims's related writ application, finding that the amended application was not timely filed in the state trial court, citing La. Code Crim. P. art. 930.8.[17]

### III. FEDERAL HABEAS PETITION

On September 29, 2017, after correction of certain deficiencies, the clerk of this court filed Sims's federal habeas corpus petition in which he asserts two grounds for relief:[18] (1) The state trial court erred when it denied the claim of insufficient evidence. (2) The state trial court erred when it denied the ineffective assistance of counsel claim for not filing post-conviction motions.

The State filed a response in opposition to Sims's federal petition, asserting that the petition is time-barred and, alternatively, that Sims failed to exhaust state court review in a procedurally proper manner.[19] Sims filed a reply to the State's response, asserting that the State's calculation of the finality of his conviction was erroneous and that his federal petition should be considered timely filed.[20]

---

[16]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2016-K-0090, 2/19/16; 4th Cir. Writ Application, 2016-K-0090, 1/26/16 (dated 1/15/16).

[17]State ex rel. Sims v. State, 224 So.3d 355 (La. 2017); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 16-KH-0540, 8/4/17; La. S. Ct. Writ Application, 16-KH-540, 3/23/16 (dated 3/15/16).

[18]Rec. Doc. No. 4.

[19]Rec. Doc. No. 10.

[20]Rec. Doc. No. 11.

6

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[21] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Sims's petition, which, for reasons discussed below, is deemed filed on September 1, 2017.[22] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Sims's deficient petition September 6, 2017, when it was received and opened the case on September 29, 2017, when the filing fee was paid. Sims signed and dated the deficient petition on September 1, 2017, which is the earliest date appearing in the record on which he could have submitted the pleadings to prison officials for mailing. His payment of the filing fee does not alter the application of the federal mailbox rule to his pro se petition. Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

7

The State asserts and the record establishes both that the claims were not properly exhausted in the state courts and that Sims's federal petition was not timely filed. Because Sims's petition should be dismissed with prejudice as time-barred, it is pointless to address exhaustion.

IV.   STATUTE OF LIMITATIONS

The AEDPA requires that a Section 2254 petition must ordinarily be filed within one year of the date the conviction became final.[23] Duncan v. Walker, 533 U.S. 167, 179-80 (2001). Sims's conviction became final on January 11, 2013, which was 30 days after his conviction and sentence were affirmed on direct appeal. Applying Section 2244 literally, Sims had one year from finality of his conviction, until Monday, January 13,

---

[23]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

2014,[24] to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist that prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998). Equitable tolling is warranted only when the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Sims has asserted no reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case. The record does not establish circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable tolling in this case. See Holland v. Florida, 560 U.S. 631, 651-54 (2010) (equitable tolling would be warranted where attorney was more than

---

[24]The final day was Saturday, January 11, 2014, which extended the last day of the period to Monday, January 13, 2014. Fed. R. Civ. P. 6(a)(1)(C).

9

negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling warranted because petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed

application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that, because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998); Gray v. Waters, 26 F. Supp. 2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end

11

of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'").

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In Sims's case, the one-year AEDPA statute of limitations began to run on January 12, 2013, the day after his conviction was final under federal law. The period continued to run uninterrupted for 333 days, until December 11, 2013, when Sims submitted his application for post-conviction relief to the state trial court. The limitations period was tolled while the application remained pending until Monday, September 15, 2014,[25] when Sims failed to seek review of the state trial court's August 14, 2014, ruling.[26]

The AEDPA one-year limitations period began to run again the next day, September 16, 2014, and did so for the remaining 32 days, until October 17, 2014, when it expired. Sims had no other properly filed application for state post-conviction relief or other collateral review during that time period that might have tolled the AEDPA one-year statute of limitations. His next state court application for post-conviction relief or other collateral review was submitted for filing in the Louisiana Fourth Circuit on October 21, 2015, which was one year after the one-year AEDPA statute of limitations expired. Sims is not entitled to tolling for a state court filing made after expiration of the AEDPA limitations period. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000) (state application for habeas corpus relief filed after limitations period expired does not toll the

---

[25]The final day was Saturday, September 13, 2014, which extended the last day of the period to Monday, September 15, 2014. Fed. R. Civ. P. 6(a)(1)(C).

[26]Even if Sims soon thereafter filed a motion seeking to amend his application, a pleading not in the state court record, that pleading did not serve to trigger tolling under the AEDPA. Higginbotham v. King, 592 F. App'x 313, 314 (5th Cir. 2015) (a motion for leave seeks permission, not review of the conviction and sentence to trigger tolling).

limitations period); accord Higginbotham v. King, 592 F. App'x 313, 314 (5th Cir. 2015) (citing Scott, 227 F.3d at 263).

Therefore, under the mailbox rule, Sims's federal petition is deemed filed on September 1, 2017, which was more than two years and ten months after the AEDPA one-year statute of limitations expired on October 17, 2014. His federal petition was not timely filed and must be dismissed with prejudice for that reason.[27]

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Ronald Sims's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

---

[27]The United States Supreme Court decision in Martinez v. Ryan, 566 U.S. 1 (2012), is not relevant to the timeliness of this federal petition. In Martinez, the Court held that a procedural bar imposed by state courts "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" Trevino v. Thaler, 133 S. Ct. 1911, 1912 (2013) (quoting Martinez, 566 U.S. at 13). The state courts' last procedural disposition of Sims's ineffective assistance of counsel claim is not the basis for dismissal in this federal court. His federal petition was not timely filed under federal law. The decisions in Martinez and Trevino do not address or provide an excuse for untimely filing of a federal habeas petition. See Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); Smith v. Rogers, No. 14-0482, 2014 WL 2972884, at *1 (W.D. La. Jul. 2, 2014); Falls v. Cain, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (order adopting report and recommendation). Martinez and Trevino also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA. See In re Paredes, 587 F. App'x 805, 813 (5th Cir. 2014) ("[T]he Supreme Court has not made either Martinez or Trevino retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); Adams v. Thaler, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Neither Martinez nor Trevino provide equitable or statutory relief from petitioner's untimely filing under the AEDPA.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[28]

New Orleans, Louisiana, this ___28th___ day of June, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[28]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.